**Entered on Docket**
**January 28, 2021**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



The following constitutes the order of the Court.
Signed: January 28, 2021

_Stephen Johnson_
_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re

LEWIS WELDON ROACH, III and
MARILEN VERGARA ROACH,

Debtors.

Case No. 20-51257 SLJ
Chapter 13

Hearing:     December 10, 2020
Time:        10:00 a.m.
Ctrm:        9 (remote)

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN PROVISION AND FOR CONFIRMATION OF DEBTORS' PROPOSED CHAPTER 13 PLAN

## I.  INTRODUCTION

I am asked to decide what sort of objection triggers the application of § 1325(b)[1],

which requires a chapter 13 plan have a fixed minimum length of 36 or 60 months, and

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy
Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil
Procedure, all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy

Case: 20-51257   Doc# 49   Filed: 01/28/21   Entered: 01/28/21 15:09:25   Page 1 of 30

whether Debtors are entitled to modify the terms of this district's chapter 13 form plan. The request is made in light of the recent Ninth Circuit opinion in *In re Sisk*, 962 F.3d 1133 (9th Cir. 2020). I will answer those questions below. In subsequent filings, Debtors argue that I should go further and determine the legality of the district's 13 form plan. I decline to rule on that issue because it was not raised in the motion.

In short, I conclude that an objection to confirmation only implicates § 1325(b) if it is specific and addressed to the terms of that subsection. The chapter 13 trustee did not raise such an objection here. So finding, I will approve the majority of the requested non-standard provisions because they are consistent with *Sisk*. Certain plan provisions discussed below do not violate *Sisk* or other bankruptcy law, thus no change to the form plan is required or authorized.

## II. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and by reference from the District Court pursuant to N.D. Cal. General Order No. 24, § 1.01. **This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).**

## III. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are undisputed. Debtors filed a voluntary petition under chapter 13 of the Bankruptcy Code on August 21, 2020. Debtors are retired and living on retirement income and disability benefits. They own a rental property in Lake Elsinore, California, but the rental income does not cover the mortgage expense, resulting in a negative cash flow of $435 per month. The property is valued at $435,000, and LoanDepot.com, LLC ("LoanDepot") holds a note and deed of trust against the property in the approximate amount of $345,238. The only other secured debts scheduled by Debtors are approximately

---

Procedure, and all "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

$4,690 owed to Navy Federal Credit Union, which sum is secured by Debtors' savings account, and approximately $600 owed to San Bernardino County Tax Collector on account of Debtors' timeshare interest in a Lake Arrowhead Chalet. They own free and clear a 2015 Toyota Camry with 105,000 miles. Debtors scheduled approximately $121,000 in unsecured debt, mostly from credit cards.

Debtors are below-median-income debtors. According to Schedules I and J, they have a monthly income of $3,479, and after deducting their rental expense of $750 and other living expenses, their monthly net income is $175. In their plan ("Plan"), Debtors propose to pay $175 per month for 41 months, for a total of $7,175, most of which will be applied to the fees of their counsel, which total $6,130.

Two parties filed objections to confirmation of the Plan: LoanDepot objected to the Plan, asserting that it does not provide for arrears of $852.21 on its loan or for ongoing mortgage payments. The chapter 13 trustee ("Trustee") also objected. Her original objection ("Confirmation Objection") identified the following points:

1.   The Plan is not feasible under § 1325(a)(6) because the total plan payments of $7,175 are insufficient to pay all claims, which will require $8,173.76.

2.   The Plan fails the liquidation test in § 1325(a)(4) because unsecured creditors will receive only $215 whereas the excess equity of Debtors' property amounts to $369.05.

3.   Trustee cannot properly determine Debtors' compliance with the liquidation test until Debtors provide Trustee with written documentation regarding the year, make, mileage, and condition of the Toyota Camry.

4.   Debtors failed to comply with § 521(a)(1)(B)(iv) because they did not provide Trustee with a copy of their payment advices or a certification that they are not available.

5.   Debtors failed to comply with § 521(e)(2)(A)(i) and (B) by not providing Trustee with their 2019 tax returns.

6.   Debtors did not provide the aforementioned tax returns to Trustee prior to the meeting of creditors.

7.   The Plan does not comply with § 1325(a)(5) because it omits the scheduled debt of LoanDepot.

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…        3/30

Case: 20-51257   Doc# 49   Filed: 01/28/21   Entered: 01/28/21 15:09:25   Page 3 of 30

8. The Plan does not comply with § 1322(b)(5) because it does not provide for payment of prepetition arrears to LoanDepot.

Debtors are not satisfied with the chapter 13 form plan ("Local Form Plan") required for use in the Northern District of California. As such, they filed a Motion for Approval of Fixed Dollar Dividend Plan Provision and for Confirmation of Debtors' Proposed Chapter 13 Plan ("Motion"). They requested changes to the following standard provisions in the Local Form Plan by way of non-standard provisions added to Section 7 of the Local Form Plan:

**Form Plan Section 2.01**: To complete this plan, Debtor shall submit to the supervision and control of Trustee on a monthly basis the sum of $_____.

**Debtor's proposed modification (Form Plan § 7.01): Amend Section 2.01 so the cumulative number of months for plan duration is estimated, instead of fixed.**

**Form Plan Section 2.03**: The monthly plan payments will continue for ___ months unless all allowed unsecured claims are paid in full within a shorter period of time. If necessary to complete the plan, monthly payments may continue for an additional 6 months, but in no event may a plan be proposed and confirmed that exceeds 60 months. This section is to be read in conjunction with section 3.14.

**Debtor's proposed modification (Form Plan § 7.02): Delete Section 2.03 in its entirety.**

Case: 20-51257   Doc# 49   Filed: 01/28/21   Entered: 01/28/21 15:09:25   Page 4 of 30

**Form Plan Section 3.14**: Class 7 consists of all other nonpriority unsecured claims not provided for in Class 6. These claims total approximately $_____. Class 7 creditors shall be paid on a pro-rata basis by the Trustee from the funds remaining after the Trustee pays the administrative expenses and other claims provided for in this plan. **[select one of the following options:]**

_____ **Percent Plan**. Class 7 claimants will receive no less than _____ % of their allowed claims through this plan.

_____ **Pot Plan**. Class 7 claimants are estimated to receive _____ % of their allowed claims through this plan.

This section is to be read in conjunction with section 2.03.

**Debtor's proposed modification (Form Plan § 7.03):**

**Add and select the following option:**

**Fixed Dividend: Class 7 claimants shall receive an aggregate dividend of $215, which shall be shared pro-rata by claimants, based on the amounts of their respective allowed nonpriority unsecured claims.**

Debtors contend these changes are warranted by the Ninth Circuit's recent decision in *In re Sisk*, 962 F.3d 1133 (9th Cir. 2020). That case held that a debtor may propose an estimated duration in a plan that has no objection pursuant to § 1325(b).[2]

Trustee opposes the Motion. She contends *Sisk* has no application to this case. She also argues that the Confirmation Objection triggered the plan term requirements in § 1325(b)(1) so the plan length must meet a specified minimum duration.

_____

[2] A substantially similar motion was filed in a different case, *In re Maquinalez* (Case No. 20-51275), by different counsel. The identical Memorandum of Points and Authorities were filed in this case and *Maquinalez*. However, the relief requested in *Maquinalez* is different from the relief in this case as to § 2.03. In *Maquinalez*, debtor sought to amend § 2.03 by deleting most of the section but keeping the following language: "In no event may a plan be proposed and confirmed that exceeds 60 months. This section is to be read in conjunction with section 3.14." In this case, Debtors are seeking to delete § 2.03 in its entirety. As neither the chapter 13 plan nor the motion to approve non-standard provisions drew any objection, I granted the unopposed motion in *Maquinalez*.

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…        5/30

The record shows that Trustee amended her confirmation objections several times after the Motion was filed. The most current version, the Third Amended Confirmation Objection, identifies the following points:

> 1.    The Plan does not comply with § 1325(a)(5) because it omits the scheduled debt of LoanDepot.

> 2.    The Plan does not comply with § 1322(b)(5) because it does not provide for payment of prepetition escrow shortage to LoanDepot.

> 3.    Trustee objects to the proposed non-standard provisions in the Motion because Trustee objected to confirmation and Debtors are subject to the applicable commitment period of 36 months under § 1325(b).

## IV.    THE PARTIES' ARGUMENTS

### A.    Debtors' Arguments

Debtors' Motion relies exclusively on *Sisk* for the proposed modifications to the Local Form Plan. After Trustee opposed the Motion on the ground that § 1325(b) has been triggered by her Confirmation Objection, Debtors, while conceding that an objection pursuant to § 1325(b) will trigger the applicable commitment period, read § 1325(b) in the strictest sense and argue that the conditions in § 1325(b)(1) are triggered only if all of the following requirements are met: (1) the objection must be expressly premised on § 1325(b); (2) it must pertain to a dispute with the amount of the projected disposable income; and (3) it must be sustained by the court. As Trustee's confirmation objections did not satisfy any of these conditions, Debtors maintain that § 1325(b) does not apply.[3]

---

[3] Debtors also argue that the confirmation objection of LoanDepot is not a § 1325(b) objection, but no party has contended that it is. As a secured creditor, LoanDepot does not have standing to object under § 1325(b). *See* 11 U.S.C. § 1325(b)(1); *In re Andrews*, 155 B.R. 769, 771 (B.A.P. 9th Cir. 1993), *aff'd* 49 F.3d 1404 (9th Cir. 1995)(Congress intended to limit the objections under § 1325(b) to the chapter 13 trustee and unsecured creditors); *In re Tracey*, 66 B.R. 63 (Bankr. D. Md. 1986)(secured creditors have no standing to object under § 1325(b)). Therefore, the confirmation objection of LoanDepot is irrelevant to the determination of whether § 1325(b) applies to this case.

Case: 20-51257    Doc# 49    Filed: 01/28/21    Entered: 01/28/21 15:09:25    Page 6 of 30

In their reply, Debtors raise an additional argument for the deletion of § 2.03. Debtors contend that § 2.03, in requiring a debtor to enter a duration for payments, is poorly drafted and conflates the concepts of "plan duration" and "payment duration" enunciated in *In re Flores*, 735 F.3d 855 (9th Cir. 2013).

Debtors filed a supplemental brief that was neither requested nor approved. It contains new arguments that, while thought provoking, are not properly before me. In summary, the supplemental brief raises two new claims. First, Debtors argue that § 2.03 is illegal because it (1) denies Debtors the benefit provided in § 1322(a)(4); (2) improperly imposes an applicable commitment period when no § 1325(b) objection has been raised since a debtor must file a plan using the Local Form Plan at the commencement of the case; (3) violates Bankruptcy Rule 9029(a)(1) by restating § 1322(d) that a plan must not exceed 60 months to be confirmed; and (4) violates the CARES Act, which allows the modification of a plan to 84 months under certain circumstances.[4] Second, they argue that because the provisions which Debtors sought to amend -- §§ 2.01, 2.03, and 3.14 – are among the many "detrimental plan provisions,"[5] the use of the Local Form Plan "deprives any Chapter 13 debtors of their bankruptcy rights," and using the non-standard provisions to alter them puts a debtor's attorney in conflict with his or her clients and jeopardize an attorney's excellent reputation in the legal community. Moreover, Debtors allege that the Local Form Plan is

---

[4] The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, added subsection (d) to § 1329, which in pertinent part, provides:
(d)
    (1) Subject to paragraph (3), for a plan confirmed prior to the date of enactment of this subsection, the plan may be modified upon the request of the debtor if—
        (A) the debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID–19) pandemic; and
        (B) the modification is approved after notice and a hearing.
    (2) A plan modified under paragraph (1) may not provide for payments over a period that expires more than 7 years after the time that the first payment under the original confirmed plan was due.

[5] Debtors did not specify the other "detrimental plan provisions."

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…          7/30

Case: 20-51257   Doc# 49   Filed: 01/28/21   Entered: 01/28/21 15:09:25   Page 7 of 30

"inadequately drafted," and for these reasons, I should not require the use of the Local Form Plan and instead should follow Debtors' counsel's suggestions to draft a new form plan.

### B. Trustee's Arguments

Trustee's arguments are impossible to reconcile with those of Debtors'. In Trustee's view, the plain language of § 1325(b) provides that any objection, including confirmation objections under § 1325(a) and non-§ 1325 objections, such as failure to file or provide documents to Trustee under § 521, will trigger § 1325(b). Thus, Trustee argues that every "objection" she raises relates to confirmation, even though such an objection may arise under a statute or rule that is not § 1325(b).

Trustee also asserts that a § 1325(b) objection need not be identified as a § 1325(b) objection. She contends that § 1325(b) is implicated by law when she files an objection and notes that the practice in this division for over fifteen years has been thus, so far without objection. She concludes that because she has objected to Debtors' Plan in the Confirmation Objection, § 1325(b) applies, *Sisk* is distinguishable, and Debtors' Plan must have a fixed term, not the estimated term proposed in Debtors' Motion.

## V.   DISCUSSION

### A. Objection under § 1325(b)

#### 1. *Legal Standard on Statutory Interpretation*

The first step in statutory interpretation is to determine whether the disputed language is plain and unambiguous with regard to the particular issue in dispute. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If the statutory language is unambiguous and the statutory scheme is "coherent and consistent," judicial inquiry must cease. *Id.*; *Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1244 (9th Cir. 2012)("the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (internal quotation marks and citations omitted)). The plain meaning of a statute is conclusive except in the rare cases when the literal application of a statute produces a result "demonstrably at odds with the intentions of the drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235,

Case: 20-51257   Doc# 49   Filed: 01/28/21   Entered: 01/28/21 15:09:25   Page 8 of 30

242 (1989); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 7 (2000)(the court began its analysis "with the understanding that Congress says in a statute what it means and means in a statute what it says there.").

When a statute is ambiguous, the court is permitted to consider its legislative history: "It is only when statutory terms are ambiguous, that is, open to more than one plausible interpretation, that courts may look to legislative history." *Nakano v. United States*, 742 F.3d 1208, 1214 (9th Cir. 2014)(internal citations omitted); *In re Adinolfi*, 543 B.R. 612, 615 (B.A.P. 9th Cir. 2016)("If the statutory language is ambiguous, we may consult additional guides to interpretation, such as legislative history and the statute's context.").

### 2. *Section 1325(b) is Ambiguous*

I conclude that § 1325(b) is ambiguous. It states:

> (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

The threshold issue is whether *there is a § 1325(b) objection*. If so, § 1325(b)(1)(B) requires the plan to provide all the projected disposable income to pay unsecured creditors and to run the length of the "applicable commitment period."

Focusing on the words "objects to the confirmation of the plan," the plain meaning appears to suggest that § 1325(b) is triggered by any confirmation objection, such as an objection under any of the subparts in § 1325(a). However, when viewed in the context of the overall statute, the express language of § 1325 makes clear that subsection (a) and subsection (b) are analytically distinct. The preamble to § 1325 begins, "(a) *Except* as provided in subsection (b), . . . ." 11 U.S.C. § 1325(a) (emphasis added). This seems to divide objections into two camps: § 1325(a) (which includes feasibility and good faith), and

Case: 20-51257    Doc# 49    Filed: 01/28/21    Entered: 01/28/21 15:09:25    Page 9 of 30

§ 1325(b), which is the subject of this decision. Otherwise, it makes little sense that an objection to confirmation under § 1325(a)(5) concerning the treatment of a *secured creditor* would trigger a provision regarding the treatment of *unsecured creditors*. I conclude the precise meaning of the statute is not patent.

The difficulty in understanding this language is clear from the confusion in judicial decisions involving § 1325(b). The truth is, courts have never come to a uniform conclusion about what sort of objection to confirmation triggers § 1325(b).[6] *See, e.g., In re Miller*, 247 B.R. 795 (Bank. W.D. Mo. 2000)(requiring compliance with § 1325(b) even though trustee objected only under § 1325(a)(3)); *In re Sutliff*, 79 B.R. 151 (Bankr. N.D.N.Y. 1987)(denying confirmation under § 1325(b) but trustee objected only under § 1325(a)(3)); *but see, e.g., In re Harris*, 304 B.R. 751, 755 n.4 (Bankr. E.D. Mich. 2004)(commenting that creditor who had secured and unsecured claims objected under § 1325(a)(1) and (5) and therefore § 1325(b) was not triggered); *In re Brumm*, 344 B.R. 795, 798 (Bankr. N.D. W.Va. 2006)("Unless a trustee or unsecured creditor specifically objects to confirmation of a plan under § 1325(b), that subsection is never invoked."); *In re Thompson*, 439 B.R. 140, 143 (B.A.P. 8th Cir. 2010)(because trustee's confirmation objection was based on lack of good faith under § 1325(a)(3), the requirements of § 1325(b) were not triggered). Unfortunately, in all these cases, the operation of § 1325(b) was only mentioned in the context of background and procedural history and was not the subject of dispute.

Trustee relies on *In re Williams*, 394 B.R. 550 (Bankr. D. Colo. 2008), in which the bankruptcy court commented that ". . . once either a trustee or an unsecured creditor lodges an objection to confirmation, *on any basis*, then this Court may not confirm it unless it satisfies the requirements of § 1325(b)." *Id.,* at 562. It has limited value here. The statement is probably dicta because the trustee in the case actually objected to confirmation under

---

[6] Although not faced with the issue, a bankruptcy court predicted the problem with the statute fourteen years ago: "The more interesting tactical question is what objection, if any, might be framed by a party in interest who does not want to breach § 1325(b)(1)(B)?" *In re Green*, 378 B.R. 30, 39 n. 10 (Bankr. N.D.N.Y. 2007), overruled in part by *Hamilton v. Lanning (In re Lanning)*, 560 U.S. 505 (2010).

§ 1325(b). Furthermore, the bankruptcy court did not provide any legal analysis to support this statement.

Debtors, on the other hand, rely on *In re Sisk*, 962 F.3d 1133, and argue it is binding. This is also unhelpful since *Sisk* involves plans *to which neither the trustee nor any unsecured creditor objected*. The kinds of objection that would trigger § 1325(b) were not an issue in *Sisk*.

I found one additional case dealing directly with this issue: *In re Torres*, 193 B.R. 319 (Bankr. N.D. Cal. 1996). In that case, the trustee withdrew a confirmation objection, but the court noted that to invoke § 1325(b)(1), a confirmation objection must allege that a debtor is not devoting all disposable income to the plan. Like *Williams*, the *Torres* court did not provide any legal analysis, other than a statement that the legislative history "sheds no light on whether the objection required was intended by Congress to be a specific one concerning disposable income and/or term length, or just a general one based on any ground at all."[7] *Id.*, at 323.

The cases demonstrate there is no clear, well-reasoned answer to the question of precisely what qualifies as an "object[ion] to the confirmation of the plan" within the meaning of the statute. I conclude the statute is ambiguous in this regard.

### 3. Historical Context and Legislative History

Accordingly, I review the legislative history. This exercise, fortunately, proves more fruitful in understanding the statutory standard. Before I do that, it is important to review the historical background that led to the enactment of § 1325(b) in 1984.

Prior to this time, the Bankruptcy Code required a court to confirm a chapter 13 plan if it satisfied six requirements: (1) it conformed with chapter 13 and other Code provisions; (2) all filing fees had been paid; (3) the plan was proposed in good faith; (4) unsecured creditors were to receive as much as they would in a chapter 7 liquidation; (5) the plan properly provided for the secured creditors; and (6) the plan was feasible. 11 U.S.C. § 1325(a) (1984).

---

[7] I respectfully disagree with *Torres* that the legislative history sheds no light on the issue, as discussed below.

Case: 20-51257   Doc# 49   Filed: 01/28/21   Entered: 01/28/21 15:09:25   Page 11 of 30

*(left margin, rotated text)* UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF CALIFORNIA

The courts were split on whether a plan could provide for zero or nominal payments to unsecured creditors under that statutory scheme. A number of courts held that the good faith requirement under § 1325(a)(3) mandated a higher payment to unsecured creditors than that imposed by the liquidation test in § 1325(a)(4). *See, e.g., In re Iacovaoni*, 2 B.R. 256 (Bankr. D. Utah 1980) (holding that a chapter 13 plan was not proposed in good faith if it did not contain substantial or meaningful repayments to unsecured creditors); *In re Hurd,* 4 B.R. 551 (Bankr. W.D. Mich. 1980) (same). Other courts held that nothing in § 1325(a) contemplated payments to unsecured creditors above liquidation value and that good faith required nothing more than honest intentions. *See, e.g., In re Scher*, 12 B.R. 258 (Bankr. S.D.N.Y. 1981); *In re Cloutier*, 3 B.R. 584 (Bankr. D. Colo. 1980).

The split continued in the circuit courts. In *In re Estus*, 695 F.2d 311 (8th Cir. 1982), the Eight Circuit reversed the confirmation of a 15-month plan that provided zero payments to unsecured creditors as lacking good faith. On the other hand, the Fourth Circuit, in *In re Deans*, 692 F.2d 968 (4th Cir. 1982), reversed the bankruptcy court's determination that debtor's plan did not meet the good faith requirement by providing zero payments to unsecured creditors and reasoned that the good faith test did not require substantial repayment to unsecured creditors and the only payment requirement was the minimum payment of the liquidation test. The Ninth Circuit took the same view as the Fourth Circuit, concluding that the good faith test could not be used to impose a higher payment requirement than the liquidation value in § 1325(a)(4). *In re Goeb*, 675 F.2d 1386 (9th Cir. 1982).

Congress wanted to eliminate these inconsistent results, so it amended § 1325. S. Rep. No. 65, 98th Cong., 1st Sess. 20-21 (1983). As part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Congress added what is now § 1325(b) to the Bankruptcy Code. The section provided that, upon objection of the trustee or an unsecured creditor,

unsecured claims either had to be paid in full or all of the debtor's projected disposable income for three years had to be paid under the plan.[8] 11 U.S.C. § 1325(b) (1984).

Section 1325(b) was adopted by Congress almost verbatim from a proposal made by the National Bankruptcy Conference ("NBC") at hearings before the House Judiciary Committee.[9] "That proposal and its explanation, therefore, constitute the most significant legislative history available in interpreting that provision." 8 COLLIER ON BANKRUPTCY ¶ 1325.11 (16th 2020).  At those hearings, Professor Vern Countryman and Bankruptcy Judge Conrad Cyr testified on behalf of NBC and explained the proposal that eventually became § 1325(b).

Recognizing that the then-existing chapter 13 treated unsecured creditors no better than they would be treated under chapter 7, regardless of the debtor's current income, and that courts had used the good faith requirement to impose some additional quantitative measures of payments to unsecured creditors, Professor Countryman explained that the NBC drafted a proposal that employed a more precise standard than the good faith test. Personal Bankruptcy: Oversight Hearings Before the Subcomm. on Monopolies and Commercial Law of the House Comm. on the Judiciary, 97th Cong., 1st and 2nd Sess. 7 (1981)(Statement of Vern Countryman, Professor of Law, Harvard Law School, and Vice Chairman, National Bankruptcy Conference).

Under the NBC's proposal, "any unsecured creditor *can invoke* an additional standard for confirmation of a plan not proposing full payment: that it provides for payment of the

---

[8] The requirement in § 1325(b)(1) has been frequently referred to as the "disposable income test," "ability-to-pay test," and "best efforts test." For consistency, I will use "disposable income test" in this decision.

[9] The proposal by NBC, in relevant part, provided, "Notwithstanding subsection (a) of this section, the court may not confirm a plan over a timely objection by the holder of an allowed unsecured claim, unless the payments to be made under the plan total at least
(1) an amount equal to 100 percent of allowed claims; or
(2) the debtor's total projected disposable income during the three-year period commencing on the date the debtor's first payment under the plan is due."

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…          13/30

debtor's total projected disposable income for the 3-year period." *Id.*, at 7 (emphasis added); *see also id.*, at 18 ("This amendment enables an unsecured creditor to object to the confirmation of a Chapter 13 plan *if it does not meet an ability-to-pay test*. The determination of whether the plan meets the test would be made on notice and hearing as are other issues raised by an objection to confirmation under [§ 1325(a)]." (emphasis added)). In concluding his statement, Professor Countryman stated, "The new ability-to-pay test of § 1325 as amended, *to be applied only on request of the creditors*, relates the debtor's right to the more generous relief of Chapter 13 to his ability to pay from a disposable future income over a reasonable period—i.e., ordinarily three years — in full recognition of the primary duty of the debtor to support himself and his dependents . . . *Restricting application of the ability-to-pay test under § 1325 to cases in which it is requested by creditors should avoid unnecessary litigation and places the burden of gathering and going forward with the evidence of ability to pay upon those in whose interest it is to establish its existence*." *Id.,* at 19-20 (emphasis added).

Judge Cyr's comments echoed those made by Professor Countryman. In describing the NBC's proposal, Judge Cyr stated, "The basic chapter 13 mechanism for better balancing creditor and debtor interests would be the 'ability-to-pay' test, an additional statutory standard to be satisfied as a prerequisite to confirmation . . . The present proposal is that the ability-to-pay test, *once invoked by the holder of an allowed unsecured claim*, should serve as the standard for determining whether the debtor is reasonably capable of paying more than originally proposed . . . Subsection [1325(b)] would prevent the confirmation of a chapter 13 composition plan, upon motion by the holder of an allowed unsecured claim, 'unless the payments to be made under the plan total at least . . . the debtor's total projected disposable income during the three-year period commencing on the date the debtor's first payment under the plan is due.'" *Id.,* at 108-09 (Statement of Conrad Cyr, Bankruptcy Judge for the District of Maine and Chairman of the National Bankruptcy Conference's Committee on Chapter 13) (emphasis added).

It is clear from the testimony of both Professor Countryman and Judge Cyr that § 1325(b) would apply only when invoked expressly by an unsecured creditor. For our

Case: 20-51257    Doc# 49    Filed: 01/28/21    Entered: 01/28/21 15:09:25    Page 14 of 30

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

purpose, the final version of § 1325(b) enacted by Congress added the chapter 13 trustee as a party who may object under the provision but otherwise made no substantive change to the NBC's proposal. Although the phrase "may not confirm a plan over a timely objection [by an unsecured creditor]" was changed to "[if trustee or unsecured creditor] objects to the confirmation of the plan, then the court may not approve the plan …," nothing in the legislative history suggests the change was to enlarge the nature of the objection, rather than merely a grammatical and syntactic restructuring of the sentence.

Although Congress amended § 1325(b) as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and substantially changed the definition of disposable income, it left unchanged the introductory phrase regarding objecting to the confirmation of the plan in § 1325(b)(1).

Given the legislative history and reading the statute as a whole, the better reading is that a chapter 13 trustee or an unsecured creditor with an allowed claim must expressly and affirmatively object under § 1325(b) to trigger its provisions.

### 4. A § 1325(b) Objection Must Be Specifically and Independently Raised

I conclude that the application of the confirmation requirements in § 1325 is only necessary when that provision has been invoked by its terms. As the legislative history shows, § 1325(b) was added by Congress to separate the determination of whether a plan has been proposed in good faith under § 1325(a)(3) from issues concerning the adequacy of amounts to be paid to unsecured creditors.[10] It is doubtful that Congress intended to inseparably link the two provisions by automatically triggering § 1325(b) whenever a good-faith confirmation objection is raised. If any confirmation objection under § 1325(a) also triggers § 1325(b), then § 1325(a) essentially incorporates § 1325(b). On the contrary, the

---

[10] The amount of the proposed payment may be a factor in determining good faith as part of the totality of the circumstances test. *In re Goeb*, 675 F.2d at 1389; *In re Sunahara*, 326 B.R. 768, 781-82 (B.A.P. 9th Cir. 2005).

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…                    15/30

legislative history clarifies that the mandate of § 1325(b) operates independently of the confirmation requirements in § 1325(a).[11]

I believe my reading of § 1325(b) is also consistent with the burden of proof established in the Ninth Circuit for an objection under § 1325(b)(1). In this circuit, the objecting party bears the initial burden of producing evidence that the debtor is not applying all of his disposable income to plan payments. *In re Heath*, 182 B.R. 557, 561 (B.A.P. 9th Cir. 1995); *see also* 8 COLLIER ON BANKRUPTCY ¶ 1325.11 (16th 2020)("Because it is the responsibility of the objecting party to raise the issue of ability to pay, that party has, at a minimum, the initial burden of producing satisfactory evidence to support the contention that the debtor is not applying all disposable income to plan payments.").

It is difficult to see how an objecting party could sustain its burden of proof if every objection implicated § 1325(b). This case provides a good example of my concern: Trustee's Confirmation Objection contained eight objection points, none of which was an objection under § 1325(b). According to Trustee's arguments, this Confirmation Objection was sufficient to invoke § 1325(b), even though § 1325(b) was not mentioned at all. Trustee could not have carried her initial burden of proof under § 1325(b) if it was neither raised nor discussed in her Confirmation Objection.

I do not mean to suggest that Trustee should file an objection on § 1325(b) grounds in every case. Both the legislative history and common sense suggest that an objection implicating § 1325(b) should be limited to proper cases for its application. As the Ninth Circuit stated in relation to creditors, "if creditors are concerned about a plan containing an

---

[11] The parties argued extensively about whether non-§ 1325 objections, such as a failure to provide tax returns to Trustee under § 521(e)(2) or to provide proper identification under § 521(h), constitutes a confirmation objection. My observation is that many objections to confirmation are encompassed by § 1325(a)(1), which requires compliance with other provisions of the Bankruptcy Code. *See, generally,* 8 COLLIER ON BANKRUPTCY ¶ 1325.02[2] (16th 2020) ("A chapter 13 plan must not only comply with all provisions of chapter 13 in order to meet the standard for confirmation under section 1325(a)(1), it must also comport with all other applicable provisions of the Bankruptcy Code, including, in particular, chapters 1, 3 and 5."). I do not need to decide this issue because regardless of whether they are confirmation objections, they do not implicate § 1325(b).

estimated duration, they can object prior to confirmation or seek conversion to a fixed duration under § 1329(a)." *In re Sisk*, 962 F.3d at 1147.

So, while a chapter 13 trustee must ensure that debtors dedicate all available funds to plan payments, she has discretion in deciding whether to object under § 1325(b) based on each debtor's circumstances. *In re Rodriguez*, 620 B.R. 94, 104 (B.A.P. 9th Cir. 2020); *see also In re Mars*, 340 B.R. 844, 849 (Bankr. W.D. Mich. 2006)("Section 1325(b)(1) implicitly leaves some discretion on the part of the Chapter 13 trustee not to object."); *In re Moore*, 367 B.R. 721, 726 (Bankr. D. Kan. 2007)("Chapter 13 trustees have the discretion not to file an objection to confirmation [under § 1325(b)] if the debtor's circumstances so warrant."); *In re Wirth*, 431 B.R. 209, 215 n. 8 (Bankr. W.D. Wis. 2010)("The decision to file an objection [under § 1325(b)] in a particular case would appear to be within the discretion of the trustee, who must decide whether doing so is in the best interest of unsecured creditors."). This discretion can only be exercised by a chapter 13 trustee if a § 1325(b) objection is raised independently on its own rather than inextricably linked to other confirmation objections. Trustee's position that § 1325(b) is automatically triggered by any confirmation objection takes away the very discretion that was given to her by Congress.

Trustee knows how to raise a § 1325(b) objection because she has done so in other cases. For example, in *In re Garcia,* Case No. 20-50687, Trustee's Objection to Confirmation included various objections under § 1325(a) and an objection under § 1325(b)(1)(B) in which Trustee asserted that debtors did not devote all their projected disposable income, as reflected in the means test, to pay unsecured creditors. Trustee's Objection to Confirmation, Docket No. 17, filed on June 8, 2020. In *In re Pirotta,* Case No. 20-51140, Trustee did not object to debtor's projected disposable income but objected solely to the term of the plan, asserting that because debtor is an above-median-income debtor, the plan term must be 60 months pursuant to the applicable commitment period. Third Amended Trustee's Objection to Confirmation, Docket No. 23, filed on November 23, 2020.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…        17/30

Case: 20-51257   Doc# 49   Filed: 01/28/21   Entered: 01/28/21 15:09:25   Page 17 of 30

5. *Debtor's Other Conditions for Invoking § 1325(b)*

Having decided that an objection under § 1325(b) must be expressly raised, I turn to the two other requirements that Debtors maintained must be met before the conditions in § 1325(b) are imposed. First, the objection must be sustained, and second, the objection must pertain to a dispute with the amount of the projected disposable income. Neither of these appears to be correct.

It does not make sense to say that an objection that is overruled cannot implicate § 1325(b). Section 1325(b) imposes a different and additional requirement for confirmation of a chapter 13 plan. Once an objection is raised under § 1325(b), a debtor must satisfy the confirmation requirements in both § 1325(a) and § 1325(b). For an objection under § 1325(b) to be sustained, the court must conclude that a debtor has not devoted all of debtor's projected disposable income to the plan or has proposed a term that is inconsistent with the applicable commitment period. On the other hand, when an objection is overruled, it means that requirements in § 1325(b) have been satisfied. *In re Lafferty*, 2019 WL 10431875, at *2 (Bankr. M.D. Pa. Dec. 16, 2019) ("If the Plan does not satisfy the conditions of § 1325(b), then the court may not confirm the plan over the objection of [unsecured creditor] and the Objection will be sustained. Conversely, if the Plan satisfies the conditions of § 1325(b) and it also meets the conditions of § 1325(a), then the court must confirm the plan over the objection of [unsecured creditor] and the Objection will be overruled."). Overruling the objection does not mean that § 1325(b) is not applicable.

Here is a more obvious example: What happens if a trustee objects to confirmation by contending that the proposed plan fails the good faith test of § 1325(a)(3) and the court nevertheless overrules the objection and confirms the plan? In such a case, the court has necessarily determined the plan satisfies the good faith test. It does not mean the test is not applicable, only that it was met.

Debtors' reliance on *Flores* does not change the analysis. The debtors in *Flores* had above-median income (*see generally,* § 707(b)) and proposed a plan with a duration of three years. The chapter 13 trustee objected to that plan, arguing that § 1325(b) required a

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…        18/30

minimum duration of five years. In *Flores*, the trustee did not dispute that debtors were devoting all their projected disposable income to the plan. The Ninth Circuit held that "the applicable commitment period determines the minimum duration that a plan must have to be confirmable under § 1325(b)(1)(B)[,]" regardless of the debtor's projected disposable income." *Id.*, at 858. It affirmed the decision of the bankruptcy court because debtors, having above-median current monthly income, could not propose a plan with a duration of three years upon trustee's § 1325(b) objection. Nothing in *Flores* suggests that § 1325(b) is only applicable *after* the court sustained an objection under that subsection.

Debtors' argument also undermines the clear Congressional intent that only the chapter 13 trustee or an unsecured creditor with an allowed claim may raise an objection under § 1325(b) by interjecting the court into the process and making the court the ultimate arbiter of whether a 1325(b) objection has been raised. *See In re Rodriguez*, 620 B.R. at 103 ("§ 1325(b) does not so much eliminate discretion as it redirects discretion from bankruptcy courts to chapter 13 trustees."); *In re Green*, 378 B.R. at 39 n. 10 ("Congress has tendered great discretion to the Trustee and unsecured creditors. They, and they alone, will decide whether to trigger the application of § 1325(b)(1)(B)'s projected disposable income and applicable commitment period.").

In sum, once the trustee or an unsecured creditor with an allowed claim makes a § 1325(b) objection, the court's function is to decide whether the debtor's plan has complied with § 1325(b) by sustaining or overruling the objection, not whether § 1325(b) applies to the plan.

Interestingly, Debtors' second argument that a § 1325(b) objection must pertain to a dispute with the amount of the projected disposable income seems to ignore *Flores*. As discussed earlier, the debtors' projected disposable income in *Flores* was not disputed. The only objection there was to the duration of the plan. In affirming, the Ninth Circuit concluded that the "applicable commitment period" is a temporal, or length-of-time, requirement and stated that "[t]he structure of Chapter 13 confirms that § 1325(b)(1)(B) establishes a minimum plan duration even if the debtor has no projected disposable

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…                    19/30

income." *In re Flores*, 735 F.3d at 860. Thus, like in *Flores,* a trustee or an unsecured creditor with an allowed claim may have no quarrel with the debtor's projected disposable income, which can be $0, but could still object under § 1325(b) to the duration of the plan. *See also In re Summers*, 2014 WL 4635332 (Bankr. S.D.N.Y. 2014)(sustaining objection of the trustee, who did not contest debtor's projected disposable income, that the above-median-income debtor must propose a five-year plan, citing *Flores* and other Circuit Courts of Appeals decisions holding that the "applicable commitment period" is a temporal requirement.).

### 6. *No § 1325(b) Objection Has Been Raised*

Having determined the required nature of a § 1325(b) objection, the next step is to decide whether Trustee made one here. The original Confirmation Objection did not mention § 1325(b). The First Amended Confirmation Objection (Docket No. 27), the Second Amended Confirmation Objection (Docket No. 29), and the Third Amended Confirmation Objection (Docket No. 36) all objected to the non-standard provisions at issue here on the ground that Trustee filed her Confirmation Objection earlier, which triggered § 1325(b).

One might read the amended objections as objections under § 1325(b) given their wording, but I do not find that they implicate § 1325(b). I conclude instead that these amended confirmation objections, though they certainly recite an incantation of § 1325(b), are premised on Trustee's contention that her non-§ 1325(b) objection points in the Confirmation Objection give rise to a minimum plan term under § 1325(b), as she clearly maintained at oral argument. And, as indicated earlier, Trustee is experienced in making § 1325(b) objections. Accordingly, I find that Trustee did not raise a confirmation objection under § 1325(b) so as to trigger the minimum applicable commitment period.


### B. Non-Standard Provisions

Debtors move for permission to make three specific changes to the Local Form Plan. Before ruling on these changes, however, it is important to consider what the Local Form

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…        20/30

Plan is, and what it is not. I will also comment briefly on the additional arguments raised in Debtors' supplemental brief.

### 1. *Legal Standards for Adoption of a Local Form Plan*

Congress, in adopting the Bankruptcy Code, delegated to the Supreme Court the authority to make procedural rules. 28 U.S.C. §§ 2071 and 2075. Pursuant to that authority, the Supreme Court promulgated Bankruptcy Rule 9029, which authorizes district courts to adopt local bankruptcy rules "governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction." Fed. R. Bankr. P. 9029(a).

Additionally, in 2017, the Supreme Court amended Bankruptcy Rule 3015 to require the use of Official Form 113 ("National Form Plan") in all chapter 13 cases, except to the extent a local form that complies with Bankruptcy Rule 3015.1 has been implemented at the district level. Bankruptcy Rule 3015.1 mandates that a local form plan must include certain provisions and be formatted as follows:

(a) a single Local Form is adopted for the district after public notice and an opportunity for public comment;

(b) each paragraph is numbered and labeled in boldface type with a heading stating the general subject matter of the paragraph;

(c) the Local Form includes an initial paragraph for the debtor to indicate that the plan does or does not:

(1) contain any nonstandard provision;

(2) limit the amount of a secured claim based on a valuation of the collateral for the claim; or

(3) avoid a security interest or lien;

(d) the Local Form contains separate paragraphs for:

(1) curing any default and maintaining payments on a claim secured by the debtor's principal residence;

(2) paying a domestic-support obligation;

(3) paying a claim described in the final paragraph of § 1325(a) of the Bankruptcy Code; and

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…    21/30

(4) surrendering property that secures a claim with a request that the stay under §§ 362(a) and 1301(a) be terminated as to the surrendered collateral; and

(e) the Local Form contains a final paragraph for:

(1) the placement of nonstandard provisions, as defined in Rule 3015(c), along with a statement that any nonstandard provision placed elsewhere in the plan is void; and

(2) certification by the debtor's attorney or by an unrepresented debtor that the plan contains no nonstandard provision other than those set out in the final paragraph.

### 2. *Adoption of the Local Form Plan*

The drafting of the current Local Form Plan was driven by the aforementioned 2017 change to Bankruptcy Rule 3015 and the addition of Bankruptcy Rule 3015.1. Like the majority of districts in the country, the Northern District of California elected to create a district-wide form plan. The chief judge formed a committee to work on this form, consisting of three bankruptcy judges, three chapter 13 trustees within the Northern District of California, and three chapter 13 consumer attorneys, as well as a chapter 13 creditors attorney. Each of the three divisions in the district was represented by an attorney on that committee.

The working group regularly met over several months to draft a plan and instructions. The working group reviewed form plans that were being developed in other judicial districts of California. It should come as no surprise, then, that the Local Form Plan bears substantial similarities to the plans adopted by other districts in California.[12]

Pursuant to General Order 34, the Northern District of California adopted and mandated the use of the Local Form Plan for chapter 13 cases filed or converted on or after December 1, 2017. It was properly adopted and is compliant with Bankruptcy Rule 3015.1, and none of the parties has argued otherwise.

---

[12] Local Form Plan § 2.03, by example, is akin to the local form plan in the Eastern District of California, which has an identical provision. *See* Eastern District of California Bankruptcy Form EDC 3-080, revised November 9, 2018, § 2.03.

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…        22/30

### 3. *Amending the Local Form Plan for Specific Cases*

It is true that the Local Form Plan's use is mandatory. It is not true, as Debtors' seem to contend, that it is immutable. Section 7 states: Debtor may propose nonstandard provisions that modify the preprinted text of this form plan. Modifications must be identified. *See* Instructions for Chapter 13 Form Plan (NDC-1) Required in the Northern District of California ("All changes to the plan must be set forth in a nonstandard provision and placed in section 7."); Fed. R. Bankr. P. 3015(c)("As used in this rule and the Official Form or a Local Form, 'nonstandard provision' means a provision not otherwise included in the Official or Local Form or *deviating from it*." (emphasis added)). Indeed, this ability to deviate from the standard provisions in the Local Form Plan is expressly required by Bankruptcy Rule 3015.1(e).

### 4. *Arguments Raised in Debtors' Supplemental Brief*

As noted above, Debtors in their supplemental brief argue, among other things, the Local Form Plan encumbers debtor's rights under the Bankruptcy Code and violates Bankruptcy Rule 9029(a)(1). They argue I should not require the use of the Local Form Plan. These points will not be addressed in detail because they support a relief that was improperly raised in a response brief. *See Highlander Holdings, Inc. v. Fellner*, 2020 WL 3498174, at *6 (S.D. Cal. June 29, 2020); *Zuckerman v. Green Earth Techs., Inc.*, 2011 WL 13213658, at *4 (C.D. Cal. Jan. 10, 2011) ("The Court will not grant affirmative relief based on an argument made for the first time in a Reply.").

Nevertheless, I have a few brief comments. The adoption of the Local Form Plan was necessary for the efficient and orderly administration of chapter 13 cases. *See In re McIntosh,* 491 B.R. 905, 910 (B.A.P. 8th Cir. 2013) ("The adoption of a uniform plan helps promote efficiency and assists the court in carrying out its duty of ensuring a proposed plan satisfies the requirements of the Bankruptcy Code."); *In re Sperry*, 562 B.R. 1, 5 (Bankr. D. Mass. 2016) ("Form plans promote ease and efficiency for debtors' attorneys in preparing plans and for creditors and courts in reviewing them. Standardization helps reduce the costs of chapter 13 relief."); 9 COLLIER ON BANKRUPTCY ¶ 3015.1.01 (16th ed. 2020) ("Using a

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN...          23/30

uniform plan permits the Chapter 13 trustees and attorneys for creditors frequently appearing to review the plans more quickly and efficiently. It also enables debtors' attorneys to prepare plans more quickly and efficiently. Uniformity helps to control the costs of pursuing a chapter 13 case through confirmation and prevents chapter 13 plans from taking on the time and expense associated with chapter 11."). Without it, the district, including Debtors' counsel here, will be required to use the National Form Plan, which does not suit the district very well.

No form is perfect. The Local Form Plan was developed to cover the most common situations in the Northern District of California, not just the San Jose Division. *See* Fed. R. Bankr. P. 3015.1(a) (mandating only one local form plan may be adopted in a district). It was not designed to cover every situation.[13] As *Sisk* noted, "barring a clear prohibition in the Code, debtors have consideration discretion to tailor the terms of a plan to their individual circumstances." *In re Sisk*, 962 F.3d at 1145 (citation and quotation marks omitted). The truth is, no form plan can cover every circumstance of every debtor as well as every variation that a creative debtor's counsel might propose in a plan. The ability to change the Local Form Plan by adding non-standard provisions gives flexibility to the Local Form Plan, allowing plan proponents to make alterations as may be appropriate to suit the circumstances.[14]

### 5. *Modifications to Sections 2.01 and 3.14*

It is finally time to turn to Debtors' specific requests to modify the Local Form Plan. The first request is to amend § 2.01, which requires a debtor to disclose the amount of monthly plan payments submitted to the chapter 13 trustee. Debtors' proposal is to include

---

[13] The Local Form Plan includes several pre-approved non-standard provisions for the more common modifications. *See* Instructions for Chapter 13 Form Plan (NDC-1) Required in the Northern District of California, revised January 31, 2018, § 4.

[14] "However, the right to substitute nonstandard provisions does not go so far as to permit the debtor to totally replace the standard form plan with another plan." 9 COLLIER ON BANKRUPTCY ¶ 3015.1.06 (16th 2020).

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…          24/30

the duration of payments in this section and have that duration be an estimated length of 41 months. The second request is to amend § 3.14, which provides for treatment of general unsecured creditors, by adding and electing a fixed-dividend plan. Trustee's objection is premised only on the operation of § 1325(b), which I concluded is not applicable.[15] Accordingly, Trustee's objection is overruled in this respect.

Because there is no § 1325(b) objection, these amendments, by way of non-standard provisions, are permissible pursuant to *Sisk* and are approved.[16]

### 6. *Deletion of Section 2.03*

The final request is to delete § 2.03 in its entirety. I will partly grant and partly deny this request. For clarity, I repeat the text of § 2.03 here, separated numerically to identify specific phrases that will be addressed later:

> **Form Plan Section 2.03: (1)** The monthly plan payments will continue for ___ months unless all allowed unsecured claims are paid in full within a shorter period of time. **(2)** If necessary to complete the plan, monthly payments may continue for an additional 6 months, **(3)** but in no event may a plan be proposed and confirmed that exceeds 60 months. **(4)** This section is to be read in conjunction with section 3.14.

> **Debtor's proposed modification: delete Section 2.03 in its entirety.**

Part (1) -- The monthly plan payments will continue for ___ months unless all allowed unsecured claims are paid in full within a shorter period of time.

This phrase is no longer necessary in view of my decision regarding §§ 2.01 and § 3.14. The length of the plan is estimated and placed in § 2.01.

_____

[15] Trustee did not object to these identical non-standard provisions in *Maquinalez,* which had no confirmation objections. *See, supra,* note 2.

[16] I make no determination whether the estimated term of 41 months proposed by Debtors complies with § 1322(d)(2), which prohibits a plan term longer than three years for a below-median-income debtor, unless the court, for cause, approves a longer term. Absent objection and briefing, I have to assume this is not an issue for the parties.

<u>Part (2) -- If necessary to complete the plan, monthly payments may continue for an additional 6 months.</u>

Plans that are drafted to include a specific payment for a specified period require some flexibility in terms of an end-point. That is because chapter 13 trustee compensation can vary over the life of the case. Sometimes, claims change too. The district has built some wiggle room into the Local Form Plan to allow for this and other unexpected contingencies. It is neither required by the Bankruptcy Code nor caselaw. If Debtors wish to eliminate it, they may do so.

<u>Part (3) -- but in no event may a plan be proposed and confirmed that exceeds 60 months.</u>

Debtors request elimination of this provision in their original Motion pursuant to *Sisk*, but *Sisk* does not control this point. In their supplemental brief they further contend the Local Form Plan should not include a provision stating the plan must complete in 60 months because it is illegal and contrary to both the Bankruptcy Code and Bankruptcy Rules. These arguments were only presented in the supplemental filing but I will exercise my discretion to consider them here and note Trustee had the opportunity to brief these points.

Debtors argue that a 60-month term is inconsistent with federal law, specifically the recently enacted CARES Act which added subsection (d)(1) to § 1329 to permit a debtor to modify a confirmed plan and extend the plan for up to seven years if such debtor is experiencing a material financial hardship as a result of the pandemic. 11 U.S.C. § 1329(d)(1). But Debtors have not shown they have standing to make this argument. The provision at issue only applies to chapter 13 plans that were confirmed on the date of the statute's enactment, which was in 2020. Debtors are not attempting to modify a confirmed plan and have asserted no injury from this alleged violation.

Debtors' next argument is that this sentence violates Bankruptcy Rule 9029(a)(1) by restating § 1322(d) which provides that a plan cannot be confirmed if it exceeds 5 years. Debtors' contention is that any attempt "to restate the law" is a violation of Bankruptcy Rule 9029(a)(1) because it is "duplicative" of the Acts of Congress. Generally speaking, I agree

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…          26/30

that restating the law should be kept to a minimum in a form plan. But some repetition is inevitable to make the form readable and to provide proper notice to parties in interest.

I would note that the Local Form Plan touches on other provisions of the law: Section 3.01 repeats Bankruptcy Rule 3002(a), stating that a claim will not be paid unless a proof of claim is filed; § 3.04 repeats 28 U.S.C. § 586(e)(1) regarding Trustee's compensation as well as § 1326(b) concerning priority of payments; § 3.07(b)(1)(B) repeats Bankruptcy Rule 3002.1 by advising Class 1 creditor must give notice of payment change; § 3.08(b) repeats § 1326(a)(1)(C) on adequate protection payments; § 3.08(c)(2) repeats the "hanging paragraph" of § 1325 regarding vehicles purchased within 910 days of filing; § 3.08(c)(3) restates § 1322(b)(2) that a debtor cannot modify the claim of mortgages secured by debtor's principal residence; § 3.12 restates § 1322(a)(2) that priority claims will be paid in full unless the claimant agrees to a different treatment; and § 6.03 restates § 1328(a) that neither confirmation nor completion of plan payments discharges non-dischargeable debts. Taking out these provisions, the Local Form Plan does not function. In fact, no district would be able to propose a workable local form with this limitation.[17]

In effect, Debtors would read an additional requirement into Bankruptcy Rule 3015.1 -- that a district cannot repeat any Code provisions and rules in drafting a form plan lest it run afoul of Bankruptcy Rule 9029(a)(1). I cannot square that with the introductory phrase in Bankruptcy Rule 3015.1 -- "[n]otwithstanding Rule 9029(a)(1)[]" – because it seems to permit such restatements. Besides, a court ought to read statutes – and rules -- as complementary when possible. *See United States v. Wing*, 682 F.3d 861, 867 (9th Cir. 2012) ("When interpreting words in a statute, we start with the premise that the words of a statue must be read in their context and with a view to their place in the overall statutory scheme. Our goal is to understand the statute as a symmetrical and coherent regulatory scheme, and

---

[17] A review of the local form plans from districts in the Ninth Circuit including Alaska, Arizona, California, Washington, Idaho, Montana, Nevada, Oregon, and Hawaii shows they all restate the Bankruptcy Code and Rules in some respects and doubtless these too would run afoul of Debtors' interpretation of Rule 9029(a)(1).

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…          27/30

to fit, if possible, all parts into a harmonious whole."); *In re Stijakovich-Santilli*, 542 B.R. 245, 255 (B.A.P. 9th Cir. 2015)(standard rules of statutory interpretation apply equally to interpretation of the Bankruptcy Rules).

It is true, as Debtors argue, that a plan can exceed 60 months over its term in some circumstances. And the caselaw in this circuit provides bankruptcy courts with considerable flexibility in determining the outcome of cases when plans have run over the 60-month period. But this does not effectively answer the question here, namely whether a plan can be confirmed when it exceeds 60 months. To have this specific requirement written into a plan is not surplusage but a specific recognition of the confirmation requirements imposed on chapter 13 plans.

In sum, the Local Form Plan does more than merely duplicate the Bankruptcy Code and Rules in this regard. Its use is therefore authorized under Bankruptcy Rule 3015.1 "[n]otwithstanding Rule 9029(a)(1)." Accordingly, phrase (3) should not be modified and the request is denied.

### Part (4) This section is to be read in conjunction with section 3.14

With the changes to §§ 2.03 and 3.14, this reference to § 3.14 in § 2.03 is meaningless and no longer necessary. The request to delete this sentence in § 2.03 is granted.

## VI.   CONCLUSION

Not all objections to the confirmation of a chapter 13 plan are the same. I conclude that if a party has objected to confirmation and is seeking to have the plan run a fixed minimum term, the objection should specifically and affirmatively reference § 1325(b) and should request a minimum plan length. Because Trustee did not do so here, the conditions in § 1325(b) were not triggered and the plan here has no required minimum term.

For the foregoing reasons, non-standard provisions §§ 7.01 and 7.03, modifying §§ 2.01 and 3.14 of the Local Form Plan respectively, are approved in their entirety.

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…          28/30

The request to approve non-standard provision § 7.02 deleting § 2.03 is granted in part and denied in part, such that § 2.03 is amended and replaced with the following language: "In no event may a plan be proposed and confirmed that exceeds 60 months."

Debtors also request confirmation of their Plan. The only two objection points remaining on Trustee's Third Amended Confirmation Objection pertain to the treatment of LoanDepot and are similar to the points raised in LoanDepot's objection to confirmation. However, while this matter was under submission, LoanDepot withdrew its objection, indicating that it no longer contests the confirmation of the Plan. Accordingly, Trustee's Third Amended Confirmation Objection is overruled.

In the interest of judicial efficiency, Trustee should submit an order confirming the Plan but modifying § 7.02 of the Plan as consistent with this Order.

In the future, for plans without § 1325(b) objections, similar modifications premised on *Sisk* that are consistent with this Order may be proposed by debtors as approved non-standard provisions without the need to file a motion and obtain an order for cases pending before me.

IT IS SO ORDERED.

**\*\*\* END OF ORDER \*\*\***

# COURT SERVICE LIST

[ECF recipients only]

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ORDER ON MOTION FOR APPROVAL OF FIXED DOLLAR DIVIDEND PLAN…